May it please the court, and good morning. It is an honor to be here. I haven't been here for 25 years. It's an honor to be here. I'm Tim LaFawn, and I represent the appellant Clay in the Southern District of West Virginia. He was convicted of conspiracy to commit sex trafficking, sex trafficking, and two counts of obstruction. The facts are that Clay was accused of conspiracy with his co-defendant of coercing a 17-year-old to have sex with him in exchange for payment to the co-defendant, the victim being the co-defendant's daughter. According to the allegations, this happened on two different occasions, and all was done while Clay was a police officer and in a police uniform. Given my limited time, I have five errors that I'm bringing to you. Given my limited time, to the extent I don't get to the last two, I will submit on the brief. Excuse me? Sorry, before you move on from your last error, the sentencing error, I did want to confirm that you want to continue pressing this argument, since the government points out in its brief that even if you are correct about these two sentencing enhancements, the offense level doesn't change, the guidelines range doesn't change. Is this an argument you want to continue to press? I'll simply submit it on the brief. I'm not going to speak to this today. I guess I am asking why. Why would we rule on that when it would not change the offense level or the guideline? I agree it would not. Your Honor, I was just trying to point out the errors, and so I agree it would not change the sentencing guideline. Primarily, the issue I wish to raise with the Court is a term, I guess it's a term that maybe is improper, but it's used often in the case of an unwaivable conflict. To this issue, it is undisputed that a criminal defendant has a Sixth Amendment right to effective counsel, and that was established in Wheat v. United States and Gideon v. Wainwright. What I'm here for today, Your Honors, is probably best highlighted by the case, the Fourth Circuit case, Stanko v. Sterling, in which the court, this court, acknowledged the defendant's right to effective counsel and a conflict-free counsel, and highlighted that there are situations that district courts should not allow a waiver of a conflict if the trial would not be conducted within ethical standards of the profession and that legal proceedings appear fair to all who observe them, and that interest can testify in rare circumstances, insisting on conflict-free counsel even when a defendant would prefer to proceed with conflicted counsel. In that particular case, the Fourth Circuit stated that it had not had the opportunity to highlight specifically what that means, but I believe in this particular case, Your Honors, this case has to meet that standard. What happened in this case is right before the trial, the U.S. attorney . . . Can you just address, you just suggested there that, you know, there's a lack of clarity is exactly what constitutes an unwaivable conflict. It seems maybe fair. Can you square that with the fact that we're reviewing this for plain error because there was not an objection below, even assuming we got past the Rule 33b2 problem, and if there's a lack of clarity, it means whatever error, if one existed, was not plain. And so help me understand how I'm even getting to this argument where you're sort of trying to add substance to what constitutes an unwaivable conflict. Don't we have to find, like, an express idea that then was plain to find that a district court erred here? Well, I think the express idea is the fact that if this case doesn't rise to this level, none does. Well, can I ask you about that? Because honestly, well, I take it the premise would be that the counsel, right, we know the facts, that the counsel will be deterred from impeaching Ms. Nailer-Legg with her recanting letter because that would bring out these accusations that he had engaged in witness tampering. Okay, so after the conflict hearing before the district court, I am just having trouble, as a common sense matter, trying to figure out why the lawyer would be very worried about that given that the only person saying he engaged in the witness tampering, if I'm getting this right, is Mr. Nailer-Legg's husband who gets on the stand and, well, we talked about this in our first argument today, but certainly seems to be lying his head off and the district court says he is completely non-credible, completely non-credible. So it is, I am struggling to figure out what Mr. Joy would be worried about at this point. There's no serious case that he engaged in witness tampering. All I would say, Your Honor, is he was warned in the motion hearing applicable to the notice of conflict, he was warned that if he introduced a very pertinent letter that had been written by the co-defendant, Rick Anninger, if he introduced that, how it was obtained would be raised in the trial. Yeah, right. That would have only hurt him and not putting that letter into the trial of this matter. I'm sorry, how would it have hurt him because Ms. Nailer-Legg's husband would have come in to give his incredible testimony? Well, I believe what would happen is the co-defendant would have stated that it was brought on improperly and that's the reason why she recanted it. Because that would have been the only person who could have said that. And in fact, the matter is that the letter says she . . . Why do we think that's what the co-defendant would have said? Because the letter . . . Like, what's the basis for us concluding? We don't have a record that that's what would have been said, right? We do not. But the point being is that the letter recanted her entire plea agreement. She was testifying under that very plea agreement. She's the only one who could have explained, well, why did I sign that letter recanting it? And then at the same time, I'm going forward with my plea agreement here. And it's got to be the only way that evidence could have come in and that's how that recant letter was obtained. So we would have to conclude that the only way that a criminal defendant changes their story is because of witness tampering? Oh, I'm sure that's not the other reason. But that's the reason . . . That's what I'm getting at, right? Is that like, it seems like to me there are like a lot more plausible explanations for why, you know, a witness might change their story and return to the original story in the context of a criminal prosecution that doesn't involve witness tampering. Well, but it's my understanding of the record, because I didn't try this case, but it's my understanding of the record that at the hearing about this potential conflict, she testified that that's what happened. I mean, and that's the reason that the story was recanted, that she was relying on what her husband had told her that would happen if she recanted her story. And it's either that or her husband is going to testify to that. And this lawyer had been threatened that if you bring it up, we're going to bring into how this was obtained. It made no sense not to cross-examine that witness with that letter. Zero. The recantation letter, she backed off everything she said in her testimony. And yet it wasn't admitted and it was only, the only sensible conclusion is it would have affected him and not this trial. Not, and it would not have affected the, it would have helped the defendant. Can I ask you just a question about the structure of your argument here? Just assuming hypothetically we agreed that this was a non-waivable conflict, so there's no valid waiver, I think what would follow from that, but tell me if I'm wrong, is that that would put you back at Kylar and Mickens and you would still have to show the adverse effect on counsel's performance under the Mickens factors. And I don't see you making that argument in your brief. So even if you are right that there's a conflict here, that only sort of gets you in the door and you haven't argued kind of the rest of your case. So why wouldn't we affirm anyway? So the adverse effect, I believe, and I presented in my argument is the letter was so strong, the only sense that it made not to cross-examine with that letter was to save the lawyer from the adverse effect of the implication that he had committed a crime himself. Your brief says that something like we will never know why counsel didn't impeach with the letter, but you actually have to show to prevail the reason why counsel didn't impeach. Again, I'm not trying to prejudge or intimate anything about how this inquiry would come out. I'm just pointing out that you haven't argued it in your brief. So I'm just having difficulty, even if I agreed with you that this was an unwaivable conflict, tell me why that is enough for a reversal in this case. Well, as the court's aware, it's impossible to know what would happen had it been presented. You would have to prove what would happen in order to prevail. So I don't know why you keep saying that. How could you ever prove that a jury would have decided differently had they had that  Oh, not that part, sorry. I don't know how you could ever prove that until you retried the case. The point being is there's no rational basis not to have cross-examined that witness with that letter. If you read that letter, it's strong. She talks about being coerced by the U.S. Attorney's Office. Is that the standard that you're basing it on, that there's no rational basis? Maybe that's the rub here, that you're just saying that there is no rational basis for not using the letter. Because it strikes me that the letter could have been worse rather than better. I can totally imagine why a defense lawyer would not use it. So I guess if that's true, if I can envision why a defense lawyer who had no conflict whatsoever would choose not to bring that letter in, is that sufficient to resolve your case? Well, I don't think it is, Your Honor. No, no, I understand. But I just accept that as a hypothetical, that there is a rational basis for why a good defense lawyer would not open that can of worms. If that was true, would that, per Judge Harris's question, sort of resolve the matter? The point I'm trying to make is, I don't think it resolves the matter because my client had a right, under clear error doctrine, my client had a right to have a fair and effective counsel. The decision to be made by this counsel that was representing my client should not have been tainted by these threats against him. And so in your view, it's just a per se error, per se reversible error. If there's an unwaivable conflict, it must be reversed. I think based upon clear error, that's clear. And it's clearly error to not use that letter or even put a client in that decision. The person who coached and talked to the client about this before the client waived is this very lawyer who was subject to this threat. And that's where he got his advice on whether he should waive this or not. That's a conflict that you... Am I misremembering what happened? I thought that after Mr. Joy does not cross-examine with the letter, the district court once again wants to get another waiver, and I thought this time Mr. Clay did consult with a different lawyer. Is that not right? One of the lawyers he consulted with was this very lawyer. There was a lawyer that, and I'm not sure this is in the record, I won't be candid, but I know this is a fact. He had a lawyer that was a civil lawyer, happened to be in the courtroom observing because he was involved in a civil case. That's the other lawyer he got to talk to in a very few minutes outside of the presence. And he had to make a waiver based upon the advice of the other lawyer, this lawyer who was subject to this claim. And that's simply not fair counsel. With all due respect to Justice Richardson, I try cases mostly. I do not come to the Fourth Circuit very often. I've been here for 25 years. I can't think of a reason not to have crossed-examined with that letter. Well, wouldn't it be that it doesn't really reflect that well on the defendant? Because it would, I mean, it just kind of looks bad. Like maybe Mr. Clay is pressuring witnesses through his lawyer. Well, I mean, there's no evidence of that. I mean, I guess the inference could be made, but there's no evidence that he had anything to do with that alleged witness tampering. Yeah, does the letter say it implicate him doing anything wrong? No. It simply backs off the confession given by the co-defendant and the method by which that confession was obtained. I want to move quickly past this issue. I know that there's some procedural arguments. I think that this is a situation. The very person who filed the motion for new trials was this very same lawyer, and he didn't raise this issue. Couldn't have expected him to raise those issues. I thought there was something like 10 months after the new lawyer started before the motion was filed. Is that not right? I'm the new lawyer. Oh, you're the new lawyer. I'm sorry. Why did it take 10 months to file the motion? Well, as I said in my brief, of course, it got denied based upon this being past the 14 days. As I said in my brief, I got appointed, and then I had a kidney transplant. And so that postponed the case, and then I'm the one that raised the issue of ineffective counsel based upon an unwaverable conflict. So that was the gap of time in the 10 months or so. I would like to move on to... Did you raise... Just out of curiosity, I think you're out of time. You can answer this on reply. But did you raise the kidney transplant argument below? So in other words, did you argue to the district court that there should be excusable neglect in light of your own health situation? Well, I did not. But they were certainly aware that I had a kidney transplant because they granted the continuances. And... Thank you. I will submit the rest of the brief, Your  Thank you, Mr. LaVon. Ms. Harrell. May it please the court, Jennifer Harrell on behalf of the United States. This court should affirm Mr. Clay's conviction and sentence in this case. With regard to the issue that was just discussed about the unwaverable conflict, the court correctly denied that as an untimely Rule 33 motion. While Rule 45 does permit excusable error in certain circumstances, that was never raised in the motion to reopen. It was not raised in the reply to the United States response. And it is not an abuse of discretion by the court to fail to make a Rule 45 argument on behalf of the defendant. This is a rigid claims processing rule. The district court did not have discretion to avoid applying that rule. In terms of the conviction itself... Before you leave that, can you walk us through why you think that this is not a situation where the lawyer ought not to be burdened with even just a specter of something like this? Whether the original... Well, in this case, the United States raised this conflict issue as under its obligation to raise anything that could potentially be a conflict so that the court could address it. The United States was basing this on jail calls between Ms. Naylor-Legg and her husband. At a hearing that was held... That they have been recorded. They've been recorded, yes. They were supplied to the court. There was a hearing held. And during that hearing, the husband said, I made all that up. Mr. Joy never said anything to me about this. I was providing my wife with misinformation because I did not want her to plead guilty. And he described it as Mr. Joy being his source of hope because he somehow thought that Mr. Joy could get his wife out of prison. She testified that she wrote the letter asking for new counsel and recanting her stipulation of facts and her plea agreement because she believed her husband. So the testimony and the evidence in record was that Mr. Joy never said anything to anyone to try to influence her decision to get new counsel, her decision to recant. It was all Charles Legg. And the transcript does not do that hearing justice. The court was correct that his testimony was... Nothing he said made sense. And it was easy to understand why he might have been telling his wife a lot of misinformation to try to convince her to do what he wanted her to do. So the court did not actually have before it any evidence that Sebastian Joy had actually engaged in any improper conduct whatsoever. The court, out of an abundance of caution after taking a very long recess to consider it, decided to find that there was a potential conflict because it might create an appearance in front of the jury. An appearance of what? An appearance that either Mr. Joy or Mr. Clay might have a conflict with regard to a witness tampering accusation because it would come out, if they inquire, as to why she wrote that letter and she would explain that she believed that Mr. Joy would help her. She would also testify that Mr. Joy never said that to her directly and she only heard that from her husband. So the inference would be she was under potentially a misimpression that did cause her to do this. But in terms of why Mr. Joy wouldn't put on that letter, the defense argues that he would have been afraid that if it came out in front of the jury, he could face sanctions, he could face various personal and professional repercussions. If he was going to face personal or professional repercussions, the fact that we had an entire hearing about it would have kicked that off. So whether it came out in front of the jury or not would not have had any personal effect upon Mr. Joy that hadn't already come out in open court. So he did not have any particular personal reason to not use this letter. He did have a reason to understand that using that letter could make Mr. Clay look bad, as Judge Harris pointed out, and to give the United States an opportunity to, in a way, bolster her testimony. Because she would be explaining, I did write that letter and here's why. Because it was my one shred of hope that I could get out. And in that letter, she actually sets forth one of her main reasons is that she, through her conviction, had lost her children. And she blamed herself for misfortune and some terrible things that happened to her daughter while she was in prison. So it also would make her sympathetic to the jury. They would understand why she would want to do this. It wasn't that she lied in her stipulation of facts. It was that she desperately wanted her kids back. And that would have been in front of the jury with this letter. In terms of the prejudice, all of this information came out about her lying or about her saying that she lied in her plea agreement. It came out through impeachment on cross-examination because we had numerous calls from the jail where she told her husband in recorded calls, the United States pressured me. I don't want to do this. My attorney is making me do this. I'm lying in my stipulation. So she was confronted with all of these statements during cross-examination. So he was able to impeach her as claiming in the past that she lied, claiming in the past that she was unduly influenced by her attorney and that the United States had pressured her into this plea agreement without having to have the added baggage and burden that would come with this letter. And that's another reason why it wouldn't have mattered. If they had said you cannot waive this, you get a new attorney, that same baggage that somebody might have influenced her testimony, whether it be his prior attorney or his current attorney, that would still come out in front of the jury if the letter was introduced by any other attorney. Because we would have, the United States would have had the opportunity to ask her, why did you write that letter? And whether Mr. Joy is sitting there or another attorney, it's actually going to still come back and potentially reflect badly on Clay and it's going to at least say he had a prior attorney who might have tampered with the witness. Counsel, can I ask you a question about standard of review on this issue about, as I understand your colleagues briefed, is one argument on this is that this is an unwaivable conflict. And you say we should review that claim only for plain error. And I'm not getting that because this seems like an issue that can only come up. And by definition, this question comes up when the defendant wants to waive a conflict and keep his lawyer. And then on appeal, the argument is, well, the district court should not have accepted that waiver of the conflict. And the whole rule is premised on the idea that whatever the defendant is saying, the district court has an independent obligation flowing from the need to protect the integrity of the court system not to accept the defendant's waiver. So how would we be applying plain error here? No one has to bring it to the attention of the district court. Indeed, it's the opposite. The issue only arises if the defendant is saying, I don't want you to look at this. And then we say, well, the district court has to anyway. And here, the district court did apply the right standard. The district court addressed this and said, I don't have to take your waiver. I have an independent obligation. So not only is it sort of logically impossible for the defendant to raise this issue, but the district court addressed the issue. So why would we be applying a plain error review? I think this is just one of those that plain error review applies when there is no contemporaneous objection. But it is impossible for this claim to have a contemporaneous objection. That is the point of the claim. Also, the district court addressed the issue. We always say in an issue is not forfeited if the district court addressed it. Well, even under, assuming we went with plain error review, I think that if something qualifies as an unwaivable error, if it meets this standard that other circuits have put out, that it is so severe and obviously prejudicial, I believe one court described it as the public would be shocked to observe. I think that would be the kind of scenario where you could also show plain error. That may be another way of looking at it. You can, you know, it would be an error. It would be literally the definition is that it's plain on the face of the record. It would be in the interest of justice to recognize that. It seems like to me yet another logical reason, like why are we talking about plain error review? There's no such thing as an error in this context that is not plain. But okay. And that is one of the complications of this issue. It can be a little circular, just as the court pointed out. But either way, whether you review it under plain error or really any standard, there was no error by the court. The district court applied the correct standard. It accepted the waiver after giving a very thorough colloquy to the defendant. And this conflict was not, it was questionable and really a conservative decision to find that this was even a potential conflict between, because a conflict is a conflict between the defense attorney and the interests of his client. And Mr. Joy would have come out in the same position, whether it was in front of the jury during this case or not. So they did not have opposing interests. Either way, they were going to be stuck with the fact that this witness, that the co-defendant, believed this, whether rightly or wrongly. So there wasn't actually a direct conflict in existence. And it certainly was not an actual conflict that would be something that would trigger, something that is unwaivable is a great concern. And other courts, and this was pointed out in Stanko, this situation, just like it's very difficult to look at it under plain error, it's also difficult to find a situation where a court can win. It is a no-win scenario for courts. They describe it as being whipsawed by error on either side. If he denied the waiver, then he has denied the defendant of his right to counsel this choice. And if he grants the waiver, he's going to be appealed that it was an unwaivable conflict that he never should have waived. So there certainly can be no error that results in reversal of the case when the district court applies the correct law, gives a thorough colloquy, and the defendant knowingly, intelligently, and voluntarily waives the potential conflict. If there are no further questions on that issue, in brief, the evidence was more than sufficient to meet the elements of the offense. While this court does not have any published case law on what the scope of the interstate nexus is for sex trafficking, it is a de minimis standard. Congress made a finding that this has a substantial effect on commerce in the aggregate. The way the statute is phrased, it goes to the outer bounds of the commerce clause. And in this court, in other contexts, specifically RICO conspiracies, the use of an item as travel and interstate commerce is sufficient to meet that. Also, the use of phones, which were used. Can I just ask you, I understand your colleague's objection on this point to be fairly limited, just factual sufficiency that a wireless phone was used. But I was a little bit confused because you argue in your brief that you satisfy the interstate nexus under this effects test for economic activity. And that seems clearly right to me. But that's not how the jury was charged. The jury was charged differently and told, you know, you have to find the defendant used a cellular network or a car that passed an interstate commerce. Does it matter that the jury wasn't charged under the theory you are propounding? My understanding is that cell phones, it's sort of been a matter of law that cellular networks are a means and facility of interstate commerce and are channels of commerce. Yeah, I'm not saying the instruction was wrong. I'm just saying you're making a slightly different argument in your brief. And I'm wondering if I can rely on that even though it wasn't charged to the jury. I believe you can, Your Honor, because those are really kind of questions of law that would not go to the jury. We don't want individual juries deciding whether a vehicle that travels an interstate commerce can meet that de minimis standard or not. There's also abundant evidence that coercion was applied. The defendant was wearing his full police uniform, including his gun belt when he assaulted this girl on two occasions. Once in a very rural, isolated area that he selected and once in a police station itself. With regards to the Speedy Trial Act, in the most basic level of affirming that, there was a pending motion during that entire time frame. And under the Speedy Trial Act, that alone has told the Speedy Trial of flaw until that motion is decided. And it wasn't decided until the day of trial. The hearing was had during the lunch hour on the first day of trial. So from July 15th of 2022, when that motion was filed by the defendant until the day of trial, the Speedy Trial Act was told. So the district court was reluctant to rely on that. There's that long footnote, or district courts, it may be, but I don't want to rely on that. You think it's clear enough that we could affirm on that ground, notwithstanding the district court's concerns? I do, Your Honor, because it's a statutory, under the statute, that is an automatic tolling of the time. And the courts have held that when a motion requires a hearing, and 412 motions specifically, under the rules of evidence, require a hearing, until that hearing is held, the Speedy Trial Act is told. If he had held the hearing two days after the motion was filed, then the Speedy Trial Act would have automatically kicked back into play. But it wasn't, and it does not matter what the reason for the delay was. It does not matter whether the delay, or whether the motion caused the delay. It does not matter how long the delay is under the law. So I believe that the court can rely upon that without even getting into the other issues. So the motion, for any reason, that tolls it? It has to be certain types of motions, Your Honor, and I don't think we need to really go into the boundaries of what the outer parameters of that are, because the specific, one of the specific ones, is a motion that requires a hearing. And this motion, in particular, absolutely did require an in-camera hearing. So there's no question, that doesn't get pushed into a situation where it's... So why was it delayed? I requested that hearing several times, Your Honor, but we are at the discretion of the court. Discretion of the court? I requested the hearing twice, Your Honor. And the court didn't schedule it? No, not until, I believe, after jury selection. So, in other words, you can extend the jury, the Speedy Trial Act, by just not having the motion heard. That's your position? I think that's the Speedy Trial Act's position, Your Honor. And it's, again, entirely at the discretion of the court. This wasn't something where the United States was trying to toll. It was a defense motion, and the United States had no control over when that hearing was set. We requested a hearing. In fact, we had several different filings for the United States. Would you cite to say that we have no control over that, in terms of a motion? I don't believe I cited a specific case, Your Honor. You just said that... So, in other words, you can suspend the Speedy Trial Act just by not having a hearing or a motion. That's what you said. You said we have no control. Do we, as a appellate court, have no control, either, in terms of rectifying that? Well, there is Supreme Court case law on certain factors. In Henderson, the Supreme Court found that the length or reasonableness of a delay is irrelevant to whether that time is excluded. And in Tinklenburg, it does not matter whether that delay actually, or the pending motion caused that delay. So, the statute is automatic, and according to the Supreme Court, even if it seems extremely unreasonable that the court waited a year and a half to hold a motion, despite several requests, the Speedy Trial Act is still told under that statute. So, I do not believe there is discretion for a court to find that the delay of the hearing scheduled by the district court means there was a Speedy Trial Act violation. Otherwise, there was a Speedy Trial violation here. I do not believe so, Your Honor. That time was told in an order. But the time is not told. It was supersedious, right, the indictment? Yes, Your Honor. Well, you don't... It might have been told for some of the new counts, but not for all the old counts, does it? Well, the old counts were already told by the court's order. And the superseding indictment did not undo that order. That order does not become negated simply because there is a superseding indictment. Pardon? What order are you talking about? The district court entered an order excluding the time from August 23rd until December 13th of 2022, I believe right around August. It entered two orders extending the time and the defense could not have availability of witnesses. So that time was excluded. The time period is challenged of August 23rd to December 13th of 2022. It was previously excluded by an order of the court based upon the defendant's request. And his witnesses were not available. And your basic point is the court's order can't be countermanded by a grand jury superseding indictment. That's correct. When the court says this time is excluded from the Speedy Trial Act, that a grand jury can't countermand that order. That's correct, Your Honor. Unless, of course, an appellate court can say it was error for the court to do that. To grant the order. It is de novo review, Your Honor. That's right. If it violates the law, yeah, you can. That's if the July grant of the 3161H exclusion, if that was an error and your colleague had raised it, which he has not, an appellate court could surely do that. That would be a perfectly permissible grounds to object. But what we can't do is say that the grand jury countermands the district court's order under 3161H. I see that I'm out of time. May I respond, Your Honor? Sure, sure. That is correct. If the original order that the district court entered excluding the time from August 23rd to December 13th was in error, that is something the court could reverse. But this court can reverse that. A grand jury cannot. Thank you, Your Honor. Very briefly, Your Honor, speaking as to the coercion issue. I'd like to speak to the speeding trial first. Well, I mean, I think every question that you inquired of is exactly what I would have argued, frankly. There's a case that says that when the superseding indictment that we quoted in our brief, when it came into effect, the previous tolling of the speeding trial act went away. Wait, what case says that? So I don't see any case that actually says that. So the Fifth Circuit says the opposite. Every other court that's addressed this question says, in effect, that if the district court enters a 3161H order excluding time under the Speedy Trial Act, that a grand jury's indictment cannot countermand that district court's order. That the order excluding time remains valid until the district court or this court says that it's improper, not when a grand jury returns an indictment. So what case do you think supports your view? Because every single case that I've seen very clearly tells us that a grand jury cannot countermand a district court's order. Well, the motion for new trial and this brief had a case cited in it. I can't give it to you right now, but that was the argument. If that is, in fact, the case, then there is no argument other than the argument of the extending of the period of time because the district court didn't conduct a hearing. So what you're representing is that there's a case that adopted your view that a grand jury can countermand a 3161H order by issuing a superseding indictment. I mean, I can look at it. It's in the gotcha game. All I know is that I recall right now, as we sit here, a citation applicable to that. Perhaps it didn't say that. I don't know. Well, the order could only apply to what was existing for the court at that time, right? Excuse me, Your Honor? The order that the court made that Richardson is asking about would only be for the charges that existed at that time, right? It couldn't be for something that didn't exist. Well, that's the point. Right, that's the point. It's not that the grand jury is changing. The point is that it's the new. It only applies in terms of a new clock there, but it's the . . . Well, that's the argument. That's the argument we make. I don't get that. As a matter of common sense, the time was excluded because of the unavailability of a defense witness. Am I remembering right? That's what I understand, yes. Okay, so was that witness not only relevant to the superseded counts? Was the witness not relevant to the remaining counts? Well, they didn't limit . . . I would assume that he was still relevant because . . . Well, then why would it make any difference that there had been a superseding indictment? I don't understand. The superseding . . . I mean, the witness was still not available, so I guess the time is excluded. The witness was not available. Okay. As to the coercion, I don't believe there was any evidence in this trial that Larry Clay coerced the victim. But the statute specifically doesn't require that. I thought the statute predicated liability on knowledge that the victim was being coerced. You don't have to do it yourself. That's the way the statute's written. Intentionally, because Congress has in mind lots and lots of cases where sex workers are being coerced by somebody else. But there's not even any evidence that the defendant in this case knew the codependent was coercing. Okay. He didn't even know. And he didn't do any direct coercion. And the government . . . they depend highly upon the fact that he was wearing a uniform. Well, not just a uniform. The district court was really clear about this. The uniform with all the weapons on it and then the pushing and the shoving and the ejaculating. I feel like the district court checked off a lot of forms of coercion. I understand, Your Honor. I understand. Finally, I would like to say that she can understand how Larry Clay and his lawyer didn't have the same perspective. That they did not have opposing interests. I don't know how that's possible when through a hearing the defense counsel has been accused of a crime or at least a potential crime. And the number one evidence on that is a letter that would help in this case. I don't know how that could possibly be. I thank you. All right. Thank you. Mr. LaVon, I note that you're a court-appointed. On behalf of the Fourth Circuit, we thank you for the appointment. The Fourth Circuit relies on counsel like yourself to help us in that regard. We thank you. And Mr. Harrell, we acknowledge your representation of the United States in this matter. With that, we'll ask the clerk to adjourn the court, sine die, and we'll come down to recount.
judges: Roger L. Gregory, Pamela A. Harris, Julius N. Richardson